UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| GERARDO GURROLA,<br><br>               Plaintiff,<br><br>           v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Case No. ED CV 15-00474-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Gerardo Gurrola ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security disability benefits. The Court concludes that the ALJ did not err by determining that Plaintiff's anxiety was not a severe mental impairment. Also, the ALJ properly considered the medical evidence of record and gave specific, clear, and convincing reasons for discrediting Plaintiff's testimony. The Commissioner's decision is therefore affirmed and the matter is dismissed with prejudice.

///

///

///

# I.

# BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits on November 18, 2011, alleging disability beginning January 16, 2007. Administrative Record ("AR") 150-53, 169. After Plaintiff's application was denied, he requested a hearing before an ALJ. AR 68-72, 83. On October 8, 2013, Plaintiff, who was represented by counsel, appeared and testified at the hearing with the assistance of an interpreter. AR 30-44. On November 5, 2013, the ALJ issued an unfavorable decision. AR 9-29. In reaching his decision, the ALJ found that Plaintiff had the severe impairments of "disorder of the back, hypertension and diabetes mellitus." AR 17. The ALJ determined that despite his impairments, Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). AR 20. The ALJ found that Plaintiff could not perform his past relevant work as a maintenance worker and construction worker because that work requires activities precluded by Plaintiff's RFC. AR 20. However, the ALJ ultimately determined that Plaintiff was not disabled as of March 31, 2012, the date last insured, because there was work available in significant numbers in the national economy that he could have performed despite his impairments. AR 24-25. After the Appeals Council denied Plaintiff's request for review, AR 1-8, this action followed.

# II.

# ISSUE PRESENTED

The parties dispute whether the ALJ erred in: (1) not finding Plaintiff's anxiety to be a severe impairment at step two of the sequential evaluation process; (2) failing to properly consider the opinions of examining clinical psychologist George Gamez; and (3) negatively assessing Plaintiff's

credibility.[1] See Joint Stipulation ("JS") at 2-25.

### III.

### DISCUSSION

**A.** **Substantial Evidence Supports The ALJ's Determination That**
**Plaintiff Does Not Have a Severe Mental Impairment**

**1.     Relevant Law**

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). In making this determination, the ALJ is bound by 20 C.F.R. § 404.1520a, which requires a special psychiatric review technique in evaluating mental impairments. Id. Specifically, the ALJ must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment, and then, if the impairment is severe, proceed to step three of the disability analysis. 20 C.F.R. § 404.1520a; Keyser, 648 F.3d at 725. The applicable regulations specify four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated using a five-point scale: none, mild, moderate, marked, and extreme. 20 § C.F.R. 404.1520a(c)(4). The fourth functional area is rated using a four-point scale: none, one or two, three, four or more. Id. A mental impairment is generally considered not severe if the degree of limitation in the first three

---

[1] Although presented separately, the first and second issues are intertwined because Plaintiff's contention that the ALJ erred in finding his mental impairment was non-severe is based largely on his argument that the ALJ improperly discounted Dr. Gamez's opinions regarding the severity of his anxiety. Accordingly, the Court discusses them together.

functional areas is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. § 404.1520a(d)(1).

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions  such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). An impairment is not severe if it is only a slight abnormality with "no more than a minimal effect on an individual's ability to work." See SSR 85-28, 1985 WL 56856, at *3 (1985); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

**2.    Background**

a.    Dr. Gamez

On February 5, 2007, clinical psychologist George Gamez examined Plaintiff in connection with his workers' compensation claim. See AR 266-73. Dr. Gamez administered a battery of diagnostic tests including the Wechsler Adult Intelligence Scale – Spanish Editions (subtests), Bender Gestalt Visual Motor Test, Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"),

Beck Depression Inventory, Beck Anxiety Inventory, Beck Hopelessness Scale, House-Tree-Person Projective Technique, Beck Scale for Suicidal Ideation, and Forer Structured Sentence Completion Test. AR 269-71. Dr. Gamez diagnosed Plaintiff with generalized anxiety disorder and assessed a Global Assessment of Functioning ("GAF") score of 55.[2] AR 272. Dr. Gamez indicated that Plaintiff's intellectual performance was estimated to be within the average range of functioning and there were no signs of organic impairment. Id. Dr. Gamez also indicated that "[t]here were clinically significant signs of anxiety and depression." Id. Specifically, Dr. Gamez noted that Plaintiff's profile on the MMPI-2 indicated "significant psychological symptoms, which include significant depression and social withdrawal." Id. Dr. Gamez also noted that Plaintiff's House-Tree-Person drawings indicated "tension, anxiety, depression and poor planning ability." Id.

Dr. Gamez opined that Plaintiff was "temporarily totally disabled in his ability to compete in the open labor market under the category of neurosis from a psychiatric point of view" since June 2006.[3] AR 273. He estimated that Plaintiff's "temporary total disability" would continue for another two to three months after the date of the examination. Id. Dr. Gamez opined that Plaintiff's prognosis was "guarded." Id. This was because "[f]urther prognosis cannot be

---

[2] A GAF score of 51-60 is consistent with moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000) ("DSM IV").

[3] As the ALJ noted, "temporarily totally disabled" is a term of art in workers' compensation law, which indicates that "at a certain moment or for a certain period in time a worker is unable to return to the job being performed at the time of the injury, with or without modifications to the job requirements." AR 19 & n.3. However, as the ALJ noted, "[t]his is not the same criteria used to determine disability under the Social Security Act." Id.

1    rendered until [Plaintiff] has undergone a course of psychotherapy." Id. Dr.
2    Gamez recommended that Plaintiff "complete a course of one-to-one
3    individual psychotherapeutic treatment" as well as relaxation training to
4    relieve anxiety. Id. Finally, Dr. Gamez opined that "[p]sychopharmacological
5    treatment may also be necessary in this case." Id.

6        On July 29, 2008, Plaintiff returned to Dr. Gamez for further evaluation.
7    See AR 231-38. Dr. Gamez administered the same battery of diagnostic tests
8    as previously administered. See AR 234-35, 269-71. Plaintiff was again
9    diagnosed with anxiety disorder and Dr. Gamez assessed a GAF score of 58.
10   AR 235-36. Dr. Gamez opined that Plaintiff had a mild impairment in his
11   ability to comprehend and follow instructions and to perform simple and
12   repetitive tasks. AR 237. Dr. Gamez also opined that Plaintiff had a slight
13   impairment in his ability to maintain a work pace appropriate to a given work
14   load. Id. Finally, Dr. Gamez assessed a "slight to moderate" impairment in the
15   following areas: ability to perform complex and varied tasks; ability to relate to
16   other people beyond giving and receiving instructions; ability to influence
17   people; ability to make generalizations, evaluations or decisions without
18   immediate supervision; and ability to accept and carry out responsibility for
19   direction, control and planning. AR 237-38.

20            b.    Dr. Rathana-Nakintara
21       On April 29, 2012, outside the period of disability, Plaintiff was
22   evaluated by psychiatric consultative examiner Thaworn Rathana-Nakintara.
23   See AR 342-46. Plaintiff's "chief complaint" was "anxiety and depression
24   since June 2006 after [he] had [an] injury at work." AR 342. Dr. Rathana-
25   Nakintara noted that Plaintiff was not taking any psychotropic medication,
26   had no previous psychiatric treatment, and had never been hospitalized in a
27   psychiatric hospital. AR 343. Dr. Rathana-Nakintara diagnosed Plaintiff with
28   adjustment disorder with mixed anxiety and depressed mood, and assessed a

GAF score of 70.[4] AR 345. Based on the objective findings presented during the interview, Dr. Rathana-Nakintara opined:

> [Plaintiff] would have no limitations performing simple and repetitive tasks and no limitations performing detailed and complex tasks. [Plaintiff] would be able to perform work activities on a consistent basis without special or additional supervision. [Plaintiff] would have no limitations completing a normal workday or work week due to his mental condition. [Plaintiff] would have no limitations accepting instructions from supervisors and interacting with workers and with the pubic. He would be able to handle the usual stresses, changes and demands of gainful employment.

Id. Finally, Dr. Rathana-Nakintara opined that Plaintiff's prognosis was "good." Id.

### c.   Dr. Mallare

On May 31, 2012, the state agency medical consultant, Dr. L. O. Mallare, opined that Plaintiff had no restriction of activities of daily living, or in maintaining concentration, persistence or pace. AR 50. Dr. Mallare also opined that Plaintiff had mild difficulties in maintaining social functioning. Id. Dr. Mallare noted that Plaintiff had no repeated episodes of decompensation. Id. Dr. Mallare further noted that Plaintiff had a limited history of psychological treatment. Id. He indicated that the consultative psychological examiner had obtained a fairly normal mental status examination with the exception of "some anxious affect." AR 50-51. Finally, he opined that

---

[4] A GAF score of 61-70 is consistent with some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. See DSM IV at __

Plaintiff's mental impairment was non-severe. AR 51.

        d.     The ALJ's Decision

At step two of the sequential evaluation process, the ALJ found that Plaintiff's "medically determinable mental impairment of anxiety did not cause more than a minimal limitation in [his] ability to perform basic mental work activities and was therefore non-severe." AR 18. In finding Plaintiff's mental impairment non-severe, the ALJ "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders." Id. (citation omitted). Applying that analytic framework, the ALJ determined:

> The first functional area is activities of daily living. In this area, [Plaintiff] had mild limitation. The next functional area is social functioning. In this area, [Plaintiff] had mild limitation. The third functional area is concentration, persistence or pace. In this area, [Plaintiff] had mild limitation. The fourth functional area is episodes of decompensation. In this area, [Plaintiff] had experiences no episodes of decompensation, which have been of extended duration.
>
> Because [Plaintiff's] medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it was non-severe [citation omitted].

Id.

The ALJ next summarized the two reports prepared by Dr. Gamez and assigned them "little weight" because they were inconsistent with the record evidence. AR 18-19. The ALJ indicated that he had considered all of the objective clinical and diagnostic evidence relied upon by Dr. Gamez, but "[t]his objective evidence is consistent with a determination that [Plaintiff's]

mental impairment was non-severe." AR 19.

After discussing the evaluation prepared by Dr. Rathana-Nakintara, the ALJ explained:

> In determining that [Plaintiff's] mental impairment is non-severe, the undersigned gives great weight to the opinions of the psychiatric consultative examiner, and the State agency mental consultant. Dr. Rathana-Nakintara performed a full mental status examination, and her findings support her conclusion. The findings from the mental status examination were rather benign, considering that [Plaintiff] was not receiving mental health treatment nor taking any psychotropic medications at that time.

AR 20 (internal citations omitted).

### 3.   Analysis

Plaintiff contends that the ALJ erred in finding that his mental impairment was not severe at step two of the sequential evaluation process. See JS at 2-3. Relying almost entirely on the two reports prepared by Dr. Gamez, Plaintiff argues that there is substantial evidence in the record that indicates that his mental impairment was severe. Id. at 2-3, 10-11. Because the ALJ articulated specific and legitimate reasons for discounting Dr. Gamez's opinion, and because the opinions of Dr. Rathana-Nakintara and Dr. Mallare indicating that Plaintiff's mental impairment was non-severe were properly credited, the Court finds that the ALJ did not err in finding that Plaintiff's mental impairment was not severe.

### a.   The ALJ Properly Gave Little Weight to Dr. Gamez's Opinion

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20

C.F.R. §§ 404.1527(c), <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. <u>Lester</u>, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citing <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)); <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir.1983)). When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u> Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). Further, the weight given a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 404.1527(c)(3)-(6).

In this case, the record does not reflect that Plaintiff has been treated by a physician for any mental health impairment. Both Dr. Gamez and Dr. Rathana-Nakintara conducted examinations of Plaintiff and are therefore considered examining physicians. <u>See</u> AR 231-38, 266-73, 336-40; <u>see, e.g.,</u> JS at 10 (describing Dr. Gamez as a consultative examiner). Dr. Mallare reviewed

Plaintiff's medical file, but did not personally examine Plaintiff. <u>See</u> AR 45-51. As such, Dr. Mallare is a non-examining physician, and his opinion is entitled to less weight than the opinions of Dr. Gamez and Dr. Rathana-Nakintara. <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that greater weight is accorded to the opinion of an examining physician than a non-examining physician). Moreover, since Dr. Gamez's opinion was contradicted by that of Dr. Rathana-Nakintara, the ALJ could properly reject it by providing specific and legitimate reasons that were supported by substantial evidence. <u>See</u> <u>Combs v. Astrue</u>, 387 F. App'x 706, 708 (9th Cir. 2010) ("If the treating or examining physician's opinion is contradicted by another doctor, as here, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record."). That is precisely what the ALJ did here.

First, the ALJ noted that Dr. Gamez's assessments were "inconsistent with the evidence of record," including Dr. Rathana-Nakintara and Dr. Mallare's evaluations. AR 19. The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion. <u>See</u> <u>Tonapetyan</u>, 242 F.3d at 1149-50. Here, the ALJ listed all of the evidence he considered in finding that Plaintiff did not suffer from a severe mental impairment. <u>See</u> AR 18-20. Of particular importance were the findings from the full mental status examination performed by Dr. Rathana-Nakintara, which "were generally unremarkable, except [Plaintiff's] mood was depressed and somewhat anxious, and he reported hearing mumbling voices occasionally." AR 20 (citing AR 344). The ALJ emphasized that these findings supported Dr. Rathana-Nakintara's conclusion that Plaintiff would not have any functional limitations completing a normal workday or work week due to his mental condition. <u>See</u> AR 20. The ALJ further noted that the mental status examination findings were "rather benign" given that Plaintiff was not

11

receiving psychiatric treatment or taking psychotropic medication at that time. Id. (citing AR 343); see also AR 345 (noting that "[Plaintiff] is not taking any psychotropic medication and he is holding himself up quite well.").

The ALJ also relied on Dr. Mallare's evaluation, which cited Plaintiff's limited history of psychiatric treatment and "fairly normal" mental status examinations findings with the exception of "some anxious affect," in determining that Plaintiff's anxiety was "non-severe." AR 50-51. While a non-examining physician's opinion is generally entitled to less weight than that of an examining physician, the ALJ assigned Dr. Mallare's opinion "great weight" because it was more consistent with the record as a whole. AR 20; see Lester, 81 F.3d at 830-31; Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990); see also Nelson v. Astrue, No. 08-2924, 2009 WL 1699660, at *3 (N.D. Cal. June 17, 2009) (finding that ALJ properly rejected physician's opinion that was contradicted by other opinions in the medical record, including those of state agency reviewing physicians). The opinions of non-treating or non-examining physicians such as Dr. Mallare may serve as substantial evidence where, as here, the opinions are consistent with independent clinical findings or other evidence in the record. Thomas, 278 F.3d at 957.

Next, the ALJ noted that the objective clinical and diagnostic evidence used by Dr. Gamez was inconsistent with his conclusions, namely that Plaintiff was "temporarily totally disabled in his ability to compete in the open labor market," see AR 273. AR 19. Workers' compensation disability ratings are not controlling in Social Security cases and the terms of art used in workers' compensation proceedings are not equivalent to Social Security disability terminology. See Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002); see also 20 C.F.R. § 404.1504. Nevertheless, an ALJ may not disregard a physician's medical opinion from a state workers'

1   compensation proceeding. <u>Booth</u>, 181 F. Supp. 2d at 1105 (citations omitted).

2   Rather, "the ALJ must evaluate medical opinions couched in state workers'

3   compensation terminology just as he or she would evaluate any other medical

4   opinion." <u>Id.</u> (citations omitted). In order to accurately assess the implications

5   of such an opinion for the Social Security disability determination, the ALJ

6   must attempt to "translate" workers' compensation terms of art into Social

7   Security terminology. <u>Id.</u> (citing <u>Desrosiers</u>, 846 F.2d at 576). However, an

8   explicit "translation" is not required. <u>Id.</u> It is sufficient if the ALJ's decision

9   reflects that the ALJ recognized the differences in terminology and took those

10  differences into account in evaluating the medical evidence. <u>Id.</u> In addition, the

11  ALJ is "is entitled to draw inferences 'logically flowing from the evidence.'"

12  <u>Id.</u> (quoting <u>Macri v. Chater</u>, 93 F.3d 540, 544 (9th Cir. 1996)).

13       As set forth above, the ALJ noted that the terms of art used in workers'

14  compensation law are not controlling in Social Security disability cases. <u>See</u>

15  AR 19 & n.3, 23. Accordingly, the ALJ reasoned that Dr. Gamez's conclusion

16  that Plaintiff was "temporarily totally disabled" in the context of his workers'

17  compensation case "is not relevant with regard to an application under the

18  Social Security Act." AR 19 n.3. The ALJ summarized the results of Dr.

19  Gamez's evaluations of Plaintiff, including his mental status examination

20  findings, diagnosis, GAF scores, treatment recommendations, and work

21  function impairments. <u>See</u> AR 18-19. Importantly, the ALJ's decision

22  expressly states that "[t]he objective clinical and diagnostic evidence used by

23  Dr. Gamez to come to his conclusions/assessments and included in his

24  report[s] was considered." AR 19 & n.3. However, the ALJ also made clear

25  that he gave "little weight" to Dr. Gamez's conclusions because the objective

26  clinical and diagnostic evidence he used does not support a conclusion that

27  Plaintiff is unable to perform basis work activities. <u>Id.</u> An ALJ may reject an

28  examining physician's conclusions that are inconsistent with the physician's

own medical findings. See Matney ex rel Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (holding that "inconsistencies and ambiguities" in doctor's opinion were specific and legitimate reason for rejecting it). For example, the findings from Dr. Gamez's 2007 and 2008 mental status examinations, see AR 233, 268, are substantially similar to Dr. Rathana-Nakintara's findings, see AR 344, which the ALJ described as "benign," AR 20, and which supported Dr. Rathana-Nakintara's conclusion that Plaintiff did not have any mental limitations in his ability to complete a normal workday or work week, AR 345. Thus, the ALJ's determination that the contradictory opinions of Dr. Rathana-Nakintara and Dr. Mallare were more consistent internally and better supported by the objective evidence as well as the record as a whole were specific and legitimate reasons for discounting Dr. Gamez's opinions. See Lester, 81 F.3d at 830-31. Remand is therefore not warranted on this claim of error.

> b.     The ALJ Properly Determined That Plaintiff Does Not Have a Severe Mental Impairment

Plaintiff contends that, based on his diagnosis of anxiety disorder, his scores on certain psychological tests, and Dr. Gamez's observations that Plaintiff was significantly depressed, anxious, and nervous, "there is substantial evidence to support that Plaintiff's mental impairment more than minimally affects his ability to perform basic work activities." JS at 3-4. The Court disagrees.

First, the ALJ acknowledged that Dr. Gamez diagnosed Plaintiff with anxiety disorder in 2007 and 2008. AR 19 (citing AR 235, 271). However, a mere diagnosis does not establish a severe impairment. Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014) ("Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); 20 C.F.R.

§ 404.1520(a)(4)(ii).

Second, the selective testing results relied upon by Plaintiff do not establish that he was suffering from a severe mental impairment. For example, Plaintiff argues that Dr. Gamez assessed GAF scores of 55 and 58, which indicate moderate symptoms. JS at 2 (citing AR 236, 272). However, as the ALJ noted, Dr. Rathana-Nakintara assessed a GAF score of 70, which indicates mild symptoms. AR 20 & n.4 (citing AR 345). Moreover, the Commissioner has declined to endorse GAF scores, Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012). Plaintiff also cites his 2008 scores on the Beck Depression Inventory and Beck Anxiety Inventory, which placed him in the moderate range of symptomatology for depression and anxiety. JS at 4 (citing AR 234-35). However, Plaintiff ignores his scores from the previous year, which placed him in the mild range of symptomatology. AR 271. Plaintiff further argues that his MMPI-2 and House-Tree-Person test results indicate that he has significant depression, anxiety, tension, and social withdrawal. JS at 3-4. Even so, Dr. Gamez noted that, during the testing, Plaintiff "indicat[ed] some signs of emotional independence" and "felt at ease with the examiner and it was not difficult to establish a positive relationship with him." AR 269. As discussed above, the ALJ reviewed all of the testing results and other clinical findings in concluding that "[t]his objective evidence is consistent with a determination that [Plaintiff's] mental impairment was non-severe." AR 19. Nothing in the ALJ's decision suggests that he selectively analyzed the medical evidence, nor was he required to discuss every piece of evidence. See Howard ex rel. Wolff v.

15

1  Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted).

2  Finally, with regard to Dr. Gamez's findings of clinically significant

3  signs of anxiety and depression, see JS at 3 (citing AR 272), the ALJ gave

4  specific and legitimate reasons for discounting Dr. Gamez's opinions, which

5  are supported by substantial evidence, as discussed above in Section III.A.3.a.

6  The ALJ was permitted to rely on the contrary opinions of Dr. Rathana-

7  Nakintara and Dr. Mallare who found that Plaintiff's mental impairment was

8  "non-severe." It is the ALJ's province to synthesize conflicting and ambiguous

9  evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007)

10  ("When evaluating the medical opinions of treating and examining physicians,

11  the ALJ has discretion to weigh the value of each of the various reports, to

12  resolve conflicts in the reports, and to determine which reports to credit and

13  which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603

14  (9th Cir. 1999) (holding that the ALJ was "responsible for resolving conflicts"

15  and "internal inconsistencies" within the treating psychiatrist's and examining

16  psychologist's reports); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)

17  ("The ALJ is responsible for determining credibility, resolving conflicts in

18  medical testimony, and for resolving ambiguities."). Where, as here, the

19  evidence is susceptible of more than one rational interpretation, the ALJ's

20  decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

21  2005).

22  Indeed, there was sufficient evidence in the record for the ALJ to

23  conclude that Plaintiff's anxiety disorder was "non-severe." As discussed

24  above, a mental impairment generally is considered not severe if the degree of

25  limitation in the three functional areas of activities of daily living; social

26  functioning; and concentration, persistence or pace is rated as "none" or

27  "mild" and there have been no episodes of decompensation. 20 C.F.R. §

28  404.1520a(d)(1). With respect to activities of daily living, the ALJ noted

16

Plaintiff's testimony that he was able to perform light household chores including cleaning his room and laundry. AR 21, 37-39. The ALJ also noted that Plaintiff reported to Dr. Rathana-Nakintara that he does household chores, runs errands, shops, cooks, and relies on himself for transportation. AR 21, 343-44. As such, Dr. Rathana-Nakintara found that Plaintiff is intellectually and psychologically capable of performing activities of daily life. AR 345. Regarding social functioning, Dr. Gamez noted that Plaintiff was cooperative and it was not difficult to establish a positive relationship with him. AR 269. Similarly, Dr. Rathana-Nakintata observed that Plaintiff had no difficulty interacting with the clinic staff or himself, and had no difficulties in maintaining social functioning. AR 345. With respect to concentration, persistence, or pace, mental status examinations showed that Plaintiff's attention, concentration, and judgment were "fair," see AR 233, 268, and he could do serial sevens and serial threes subtraction, see 344. Dr. Rathana-Nakintara noted that Plaintiff can focus and maintain attention, and found that Plaintiff had no difficulties in concentration, persistence, and pace. Id. As the ALJ explained:

> It appears that despite his impairments, he has engaged in a somewhat normal level of daily activity and interaction. The physical and mental capabilities requisite to perform many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

AR 21. Accordingly, the ALJ rated Plaintiff's degree of limitation in the first three functional areas as "mild." AR 18.

Regarding episodes of decompensation, the ALJ found that Plaintiff had experienced no episodes of decompensation, which had been of extended duration. Id. As the ALJ noted, "there was a large gap in mental health treatment from August of 2008 until sometime after the date last insured, when

17

[Plaintiff] reported anxiety to his primary care physician." AR 19 (citing AR 356-79); see AR 375-79. The ALJ also indicated that the treatment notes reflected that Plaintiff's "psychiatric symptomatology was treated conservatively with psychotropic medications." Id. Furthermore, Plaintiff reported to Dr. Rathana-Nakintara in April 2012 that he was not taking any psychotropic medication, had no previous psychiatric treatment, and had never required psychiatric hospitalization. AR 343. Although the threshold required to show that an impairment is severe at step two is "minimal," Plaintiff did not meet his burden of showing that his anxiety was sufficiently severe to negatively affect his ability to perform work-related functions. Accordingly, remand is not warranted on Plaintiff's claim of error.

**B.      The ALJ Properly Assessed Plaintiff's Credibility**

      **1.      Relevant Law**

      To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2006)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms. Lingenfelter, 504 F.3d at 1036 (citation omitted). "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). To the extent that an individual's claims of functional limitations and restrictions due to alleged symptoms are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. Social Security Ruling ("SSR") 96-7p, 1996 WL

18

374186, at *2 (July 2, 1996) (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (quoting Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. Additionally, "[i]n weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Smolen, 80 F.3d at 1284.

## 2.    Background

At the hearing, Plaintiff testified that he last worked in 2006 after he was injured on the job. AR 34-35. Plaintiff also testified that he lives with his sister and does "light chores" like cleaning his room and doing laundry. AR 37-38. Plaintiff stated that he is able to take care of himself except for when his "pains are too strong." AR 38. He explained that "they're strong, you know, every two months, quite regularly, because [he is] taking medication." Id. He said

19

that he has foot pain from gout, but is controlling it with medication. Id. He also testified that he takes medication for diabetes, blood pressure, cholesterol, and pain. Id. Plaintiff further testified that he is able to take care of his own personal needs such as bathing, showering, doing his hair, brushing his teeth, and shaving. Id. Plaintiff stated that he spends most of the day sleeping, but sometimes watches television, goes for walks outside, and goes to the store. AR 39.

Plaintiff testified that the majority of the time, he gets dizzy and sleepy. AR 40. Plaintiff also testified that he had discussed this with his physician who said that "it's possibly due to the medication." Id. He said that occasionally his pain is so severe that he cannot dress himself or turnover in bed. Id. Plaintiff stated that he is not always in pain. Id. He further stated that "the pains could be once a week or twice a week, but taking the medication, then it gets under control." Id. Plaintiff said that there are days when he is unable to walk due to back and hip pain or gout. AR 40-41. Plaintiff also testified that he "can't bend over or move too much, or lift up some things" because of his back pain. AR 42. He testified that the heaviest he can lift is 20 to 25 pounds. Id. However, he "can't lift anything when [he] has the pain." Id. Plaintiff further testified that he takes medication when he is in pain and "it does help." AR 43. He said that "it takes the pain away but, you know, [he] still [has] that, somewhat of the pain there still." Id. He also testified that he is not able resume his normal life after taking pain medication. Id.

In addition to this testimony, the ALJ considered an "Exertion Questionnaire" completed by Plaintiff on March 2, 2012. AR 21 (citing AR 197-201). As the ALJ noted, Plaintiff's "statements in this questionnaire are of the same general nature as the subjective complaints from his testimony." Id. The ALJ also summarized and weighed the medial evidence of record. AR 22-24. In discrediting Plaintiff's subjective complaints, the ALJ explained:

20

The undersigned finds [Plaintiff's] allegations concerning the intensity, persistence and limited effects of his symptoms are less than fully credible because those allegations are greater than expected in light of the objective evidence of record. Despite [Plaintiff's] allegations of severe and debilitation pain, the evidence of record documented minimal objective findings. Moreover, there was no evidence of aggressive treatment such as pain management treatment.

[Plaintiff] described every day activities that included going out alone, running errands, shopping, cooking and doing household chores [citation omitted]. It appears that despite his impairments, he has engaged in a somewhat normal level of daily activity and interaction. The physical and mental capabilities requisite to performing many of the tasks described above as well as the social interactions replicate those necessary for obtaining and maintaining employment.

AR 21.

### 3.   Analysis

Here, the ALJ provided specific reasons for finding that Plaintiff's subjective testimony was not entirely credible, each of which is supported by substantial evidence in the record. First, the ALJ extensively reviewed the medical evidence and reasonably determined that it did not support Plaintiff's alleged symptoms and limitations. AR 22-24. For example, with respect to Plaintiff's allegations of disabling pain, the ALJ noted that a neurological examination conducted by internal medicine consultative examiner Robin Alleyne showed normal motor strength, sensation, and reflexes. AR 23 (citing AR 339); see also AR 310 (indicating that "[t]here are no sensory abnormalities noted with sensation intact to light touch and sharp/dull

sensation to pinprick in all dermatomes in the bilateral lower extremities"). Plaintiff reported to Dr. Alleyne that his back surgery was successful. AR 336. Although he continued to have chronic lower back pain, Plaintiff reported that it is "not as bad as it was and is no longer radiating." Id.; see also AR 52 (noting that Plaintiff had a "[history] of discectomy surgery done which was successful"). Dr. Alleyne found that Plaintiff's range of motion in his upper and lower extremities was grossly within normal limits with the exception of his right foot, which was inflamed from an acute gout attack. See 336, 338, 339; see also AR 49 (noting that "after his acute gout attack has been resolved, his functional assessment will improve"); AR 310.[5] And, as discussed above in Section III.A., the ALJ properly determined that the objective medical evidence, including the "unremarkable" mental status examination findings did not support the extent of the mental limitations alleged by Plaintiff. Thus, the ALJ's determination that "the objective medical evidence does not support the alleged severity of symptoms" was supported by the record. See AR 24. Although a lack of objective medical evidence may not be the sole reason for discounting a claimant's credibility, it is nonetheless a legitimate and relevant factor to be considered. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

_____

[5] In arguing that "the objective evidence does support Plaintiff's testimony regarding his pain," Plaintiff relies primarily on workers' compensation consultative examiner Philip J. Kanter's review of his medical records, which includes various diagnoses and MRI results from before and after his back surgery, see JS at 19-20 (citing AR 301-04, 306), as well as Dr. Kanter's diagnosis of "lumbosacral syndrome with sciatica/status post right L4-5 microdiscectomy" and evaluation of x-rays from October 2008 and MRI results from February and July 2007, see JS at 20 (citing AR 311-12). Plaintiff also cites the impressions from the February and July 2007 MRIs. See JS at 19-20 (citing AR 240, 247). However, the ALJ gave "little weight" to Dr. Kanter's opinion, and "great weight" to the opinions of Dr. Alleyne and the State agency physicians, findings that Plaintiff does not challenge. See AR 23.

22

2001).

Second, the ALJ noted that, despite his complaints of debilitating pain, Plaintiff's treatment history was generally conservative. The ALJ pointed out that "[t]he treatment records reveal [Plaintiff] received routine and conservative treatment since the alleged onset date and continuing through the date last insured of March 31, 2012." AR 22. Indeed, it appears that Plaintiff was treated primarily with physical therapy, chiropractic treatment, and pain medication.[6] See, e.g., AR 239, 242, 243, 245, 249, 254, 265, 323, 326. These forms of treatment are generally deemed conservative. See, e.g., Belman v. Colvin, No. 13-1466, 2014 WL 5781132, at *8 (C.D. Cal. Nov. 6, 2014); Apodaca v. Astrue, No. 11-10111, 2012 WL 4369753, at *8 (C.D. Cal. Sept. 25, 2012). Additionally, as set forth above, the ALJ noted that there was a large gap in mental health treatment from August 2008 until after the date last insured and Plaintiff's "psychiatric symptomatology was treated conservatively with psychotropic medications." AR 19 (citation omitted). A conservative treatment history is a legitimate basis for an ALJ to discount a claimant's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); see

---

[6] The medical record reflects that, in January 2007, Dr. Vikram Singh recommended a series of three lumbar epidural steroid injections, see AR 287, 304, and in December 2007, Dr. Singh scheduled the injections, see AR 286, 308. It is unclear whether Plaintiff received the lumbar injections. See AR 299, 313. Even if Plaintiff had received a few injections over the course of years, it does not undermine the ALJ's finding that Plaintiff's doctors otherwise provided nonurgent, conservative treatment of his pain. See Walter v. Astrue, No. 09-1569, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discounted plaintiff's credibility based on conservative treatment, including medication, physical therapy, and single injection); see Tommasetti, 533 F.3d at 1039; see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment"). In any event, Plaintiff appears to concede that the treatment he received was conservative.

also <u>Fair</u>, 885 F.2d at 604 (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

Finally, the ALJ noted that Plaintiff did not report severely constrained daily activities to his physicians and even if he had, the degree of limitation was disproportionate to Plaintiff's medical conditions. AR 21. In fact, despite Plaintiff's complaints of debilitating pain and significant anxiety, he was able to complete light housekeeping chores, cook, run errands, rely on himself for transportation, go for walks, and take care of her own personal care. <u>See</u> AR 37-39, 343-44. The ALJ determined that the physical and mental capabilities requisite to performing many of these activities "as well as the social interactions replicate those necessary for obtaining and maintaining employment." AR 21. While it is true that "one does not need to be 'utterly incapacitated' in order to be disabled," <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001), the extent of Plaintiff's activity here, together with the lack of objective evidence to verify his alleged symptoms, support the ALJ's finding that Plaintiff's reports of his impairments were not fully credible. <u>See</u> <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009); <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries … may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing <u>Fair</u>, 885 F.2d at 604). Accordingly, the ALJ did not err in discounting Plaintiff's credibility on this basis.

On appellate review, the Court does not reweigh the hearing evidence regarding Plaintiff's credibility. Rather, this Court is limited to determining whether the ALJ properly identified clear and convincing reasons for discrediting Plaintiff's credibility, which the ALJ did in this case. <u>Smolen</u>, 80 F.3d at 1284. It is the ALJ's responsibility to determine credibility and resolve

conflicts or ambiguities in the evidence. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's findings are supported by substantial evidence, as here, this Court may not engage in second-guessing. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002); <u>Fair</u>, 885 F.2d at 604.  It was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony. Reversal is therefore not warranted.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:   March 16, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge